IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KYLE CHRUPCALA, as the representative of a class of similarly situated persons, and on behalf of the Firstrust 401(k) and Profit Sharing Plan,<br><br>        *Plaintiff,*<br><br>    v.<br><br>FIRSTRUST SAVINGS BANK,<br>        *Defendant.* | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL NO. 25-6578 |

**MEMORANDUM**

**KENNEY, J.**                                                           **APRIL 6, 2026**

Plaintiff Kyle Chrupcala initiated this action on November 21, 2025, pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") in connection with Defendant Firstrust Savings Bank's management of its employee retirement plan. *See* ECF No. 1. On January 23, 2026, Defendant moved to dismiss the Complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6) (the "Motion" or "Motion to Dismiss"). *See* ECF No. 15. Plaintiff opposes dismissal. *See* ECF No. 19. For the reasons set forth below, the Court will **DENY** Defendant's Motion (ECF No. 15), and permit Counts I and II to proceed to discovery.

## I.    BACKGROUND

### A.  Factual Background

Plaintiff Kyle Chrupcala was an employee of Defendant Firstrust Savings Bank between 2021 to 2024. ECF No. 1 ¶ 10. During his employment, Plaintiff participated in Defendant's 401(k) and Profit Sharing Plan (the "Plan"), which was established in 1951 to provide its employees with retirement benefits. *Id.* ¶¶ 4, 10, 26. There are around 600 participants in the Plan, which has over $80 million in assets. *Id.* ¶ 9. Participants in the Plan generally have a "long

investment horizon" and seek to grow their retirement accounts in order to "generate sufficient retirement income." *Id.* ¶ 33. The Plan is a "defined contribution plan" and, as such, "maintains an individual account for each participant" that is credited with that participant's elective contributions, in addition to a *pro rata* share of employer contributions from Defendant. *Id.* ¶¶ 5–6. Participants get "all income and gains from directing the investment of their elective contributions and a *pro rata* share of investment income and gains from Defendant's investment of the employer contributions." *Id.* ¶ 6.

As relevant to Defendant's Motion to Dismiss, Defendant has sole control over how employer contributions are invested and does not permit participants to direct the investment of any employer contributions to their accounts. *Id.* ¶ 2. Instead, Defendant directs all employer contributions towards its "proprietary certificates of deposit and savings accounts" (collectively, the "Firstrust Fund"), with the result that the Firstrust Fund, a capital preservation fund, "serv[es] as the Plan's single largest holding." *Id.*; *see also id.* ¶ 40. Plaintiff alleged that the Plan's arrangement with respect to employer contributions is "not typical" and that most defined contribution plans permit participants to determine how their employer contributions are invested from a menu of different options. *Id.* ¶ 7; *see also id.* ¶¶ 54–55. While cash-equivalent accounts, such as the Firstrust Fund, "reduce volatility risk," they "generate the lowest long-term average returns" on investments and are typically appropriate only for "short-term investment objective[s]." *Id.* ¶ 36; *see also id.* ¶ 42. Plaintiff further alleged that Defendant's mandatory direction of employer contributions into its "proprietary bank accounts without giving appropriate consideration to the objectives of the Plan or Plan participants' investment time horizons and needs" led to losses to the Plan and decreased the amount of income that participants would have otherwise earned. *Id.* ¶¶ 2–3; *see also id.* ¶¶ 44–45, 47, 55.

### B. Procedural History

On November 21, 2025, Plaintiff initiated this action as the representative of a class of similarly situated persons and on behalf of the Plan. *See id.* ¶ 1; *see also id.* ¶¶ 70–82. In his Complaint, Plaintiff asserted two causes of action under ERISA for violations of 29 U.S.C. § 1104(a)(1) (Count I), and 29 U.S.C. §§ 1106(a) and 1106(b)(1) (Count II). *See id.* ¶¶ 83–95.

On January 23, 2026, Defendant moved to dismiss Plaintiff's Complaint in its entirety under Rule 12(b)(6). *See* ECF No. 15. As to Count I, Defendant argues that Plaintiff failed to state a claim for a breach of the duties of prudence and loyalty. *See* ECF No. 15-1 at 13–19. As to Count II, Defendant contends that Plaintiff's prohibited transaction claims are subject to an exemption and are also time barred by ERISA's three-year statute of limitations. *See id.* 19–22.

On February 20, 2026, Plaintiff filed an Opposition to Defendant's Motion to Dismiss the Complaint. *See* ECF No. 19. Plaintiff argues that he plausibly alleged claims for a breach of Defendant's fiduciary duties and for Defendant's engagement in prohibited transactions. *See id.* at 8–20. With respect to Defendant's affirmative defenses, Plaintiff contests both whether an exemption applies and the extent to which either of Defendant's affirmative defenses are apparent from the face of the Complaint. *See id.* at 20–26.

On March 4, 2026, Defendant filed a Reply in Support of its Motion to Dismiss the Complaint, *see* ECF No. 20, and Plaintiff filed a Surreply in Opposition to Defendant's Motion to Dismiss the Complaint on March 11, 2026, *see* ECF No. 21. Defendant's Motion to Dismiss is fully briefed and before this Court.

## II.  LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of a claim. When evaluating a motion to dismiss for failure to state a claim, the Court must "accept all factual allegations as true, [and] construe the complaint in the light most favorable to the plaintiff." *Warren Gen. Hosp. v. Amgen*

3

*Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (internal quotations and citation omitted).  To survive a Rule 12(b)(6) motion, a plaintiff's well-pleaded complaint must state a "plausible entitlement to relief," and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 559 (2007); *see also Mator v. Wesco Distrib., Inc.*, 102 F.4th 172, 184 (3d Cir. 2024) ("[T]he familiar pleading standards of Federal Rules of Civil Procedure 8(a) and 12(b)(6) require an ERISA plaintiff to allege enough facts to state a claim to relief that is plausible on its face." (internal quotations and citation omitted)).  A court is not required to assume the truth of conclusory allegations. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).  Federal Rule of Civil Procedure 8(a)(2) "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  But at the pleading stage, a plaintiff need not plead "detailed factual allegations," *Twombly*, 550 U.S. at 555, and must simply allege "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]." *Connelly*, 809 F.3d at 789 (internal quotations and citation omitted).

## III.   **DISCUSSION**

Defendant moved to dismiss the Complaint in its entirety for failure to state a claim.  *See* ECF No. 15.  First, Defendant argues that Plaintiff failed to plead adequate factual allegations demonstrating that Defendant breached its fiduciary duties of prudence and loyalty in connection with its management of the Plan.  *See* ECF No. 15-1 at 13–19.  Second, Defendant contends that Plaintiff's prohibited transaction claims are barred by an exemption and by ERISA's three-year statute of limitations.  *Id.* at 19–22.  For the following reasons, the Court will deny Defendant's Motion (ECF No. 15), and permit Counts I and II to proceed to discovery.

### A. Plaintiff Plausibly Stated a Claim for a Breach of the Duties of Prudence and Loyalty

Defendant argues that Plaintiff failed to plausibly state a claim for a breach of fiduciary duties in Count I of the Complaint. *Id.* at 13–19. Under ERISA, to plead a breach of a fiduciary duty, a plaintiff must allege the following elements: "(1) a plan fiduciary (2) breaches an ERISA-imposed duty (3) causing a loss to the plan." *Sweda v. Univ. of Pa.*, 923 F.3d 320, 328 (3d Cir. 2019) (quoting *Leckey v. Stefano*, 501 F.3d 212, 225–26 (3d Cir. 2007)). The parties do not dispute in their briefing that Defendant is a fiduciary of the Plan or whether Plaintiff adequately alleged a loss to the Plan. As was the case in *Sweda* and *Mator*, here, Defendant principally contests whether there was a breach, so the Court's analysis focuses on the second element in connection with the fiduciary duties of prudence and loyalty. *See Sweda*, 923 F.3d at 328; *Mator*, 102 F.4th at 184.

#### 1. Duty of Prudence

The Court starts with the duty of prudence. Under ERISA, fiduciaries of retirement plans "are held to the prudent man standard of care." *Sweda*, 923 F.3d at 327. Specifically, ERISA provides that a fiduciary "shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use." 29 U.S.C. § 1104(a)(1)(B). Furthermore, fiduciaries are required to manage a plan "for the exclusive purpose of . . . providing benefits to participants and their beneficiaries." *Id.* § 1104(a)(1)(A)(i). Unless "it is clearly prudent not to do so," ERISA also requires fiduciaries to diversify investments of a plan. *Id.* § 1104(a)(1)(C). In addition, fiduciaries "must prudently select investments, and failure to monitor investments and remove imprudent ones may constitute a breach." *Sweda*, 923 F.3d at 328 (internal quotations and citations omitted) (cleaned up); *see also Tibble v. Edison Int'l*, 575 U.S. 523, 530 (2015).

5

To state a claim for a breach of the duty of prudence, "a plaintiff must plausibly allege fiduciary decisions outside a range of reasonableness." *Mator*, 102 F.4th at 184. "[T]he appropriate inquiry will necessarily be context specific" because the duty of prudence "turns on 'the circumstances . . . prevailing' at the time the fiduciary acts." *Hughes v. Northwestern Univ.*, 595 U.S. 170, 177 (2022) (citations omitted). When determining whether a fiduciary breached the duty of prudence, "a court assesses a fiduciary's performance by looking at process rather than results," and focuses, for example, on how a fiduciary arrived at a decision or whether a fiduciary used "appropriate methods to investigate and determine the merits of a particular investment." *Sweda*, 923 F.3d at 329 (citation omitted). The fiduciary's process needs to "bear the marks of loyalty, skill, and diligence expected of an expert in the field." *Id.* Indeed, "[t]he law expects more than good intentions" on the fiduciary's part. *Id.* At the pleading stage, a plaintiff does not need to "directly allege[] how [a defendant] mismanaged the Plan," as long as there is "substantial circumstantial evidence from which" a court can "'reasonably infer' that a breach" happened. *Id.* at 332 (quoting *Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013)). The Third Circuit has instructed district courts to "employ a holistic approach, considering all of [a plaintiff's] well-pleaded factual allegations." *Id.* at 331. In doing so, courts may look at several factors, such as "the range of investment options," "selection and retention of investment options, and practices of similarly situated fiduciaries," to decide whether a plaintiff's allegations plausibly state a claim to relief. *Id.*; *see also Mator*, 102 F.4th at 184 ("[W]e evaluate the allegations bearing in mind ERISA's twin goals of protecting participants and encouraging plan creation through a predictable set of liabilities for employers.").

Applying the holistic approach articulated in *Sweda*, the Court finds that Plaintiff plausibly alleged a breach of the duty of prudence.  As in *Sweda*, Plaintiff's factual allegations consist of more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]."  923 F.3d at 332 (quoting *Iqbal*, 556 U.S. at 678).  Rather, there are specific factual allegations that Defendant failed to "perform its fiduciary duties with the level of care, skill, prudence, and diligence to which Plan participants are statutorily entitled under § 1104(a)(1)."  *Id.*

Plaintiff alleged that Defendant does not permit Plan participants to "direct the investment of employer contributions to their accounts," instead electing to direct 100% of those funds towards the Firstrust Fund, which consists of Defendant's proprietary certificates of deposits and savings accounts.  ECF No. 1 ¶¶ 2, 40.  Generally, employee retirement plans are "long-term investments," and participants of the Plan "have a long investment horizon and need their account values to grow in order to generate sufficient retirement income."  *Id.* ¶¶ 27, 33.  "Cash-equivalent accounts like the Firstrust [] Fund generate the lowest long-term average returns" and are thus "appropriate only if the investor has a short-term investment objective."  *Id.* ¶ 36; *see also id.* ¶ 42. Accordingly, Plaintiff alleged that Defendant's "direct[ion] [of] millions of dollars of Plan assets into Firstrust's proprietary bank accounts" was done "without giving appropriate consideration" to the Plan objectives or to participants' long-term investment needs, which caused losses to the Plan.  *Id.* ¶ 3.  For example, in the aggregate, the Firstrust Fund only yielded a 2.27% return per year between 2020 to 2024, and Defendant's practice of retaining "employer contributions solely in cash-equivalents exposed participants to excessive inflation risk."  *Id.* ¶¶ 43–44; *see also id.* ¶ 45 ("Defendant's annual average earnings rate on employer contributions of 2.27% from 2020 to 2024 was substantially outpaced by inflation at an average of 4.2% per year over the same period.").  Moreover, Defendant's sole control over how employer contributions are invested is

purportedly "not typical"; instead, "[m]ost defined contribution plans allow each participant to choose their own investments" for employer contributions. *Id.* ¶ 7; *see also id.* ¶ 48 ("Defendant's strategy caused the overall mix of investments in participants' portfolios to be far outside the norm for defined contribution plan participants."); *id.* ¶ 54 ("The Plan is an extreme outlier").  Among 401(k) plans that have between $10 million to $100 million in assets, only about 1.5% of those plans' total assets are invested in cash-equivalents.  *Id.* ¶ 53.  By contrast, the Firstrust Fund held between 25.72% to 33.91% of the Plan's total assets between 2019 to 2024.  *Id.* ¶ 54; *see also id.* ¶¶ 49–52, 55–56.  At this point, these allegations are sufficient to withstand dismissal because Plaintiff plausibly alleged that Defendant failed to "discharge [its] duties" according to the prudent man standard of care.  29 U.S.C. § 1104(a)(1).

Defendant's arguments in support of dismissal of Plaintiff's prudence claim are unpersuasive.  First, Defendant argues that Plaintiff's Complaint contains no factual allegations related to "the Plan fiduciaries' decision-making process."  ECF No. 15-1 at 14.  But the *Sweda* court cautioned that a "complaint should not be 'parsed piece by piece to determine whether each allegation, in isolation, is plausible.'"  923 F.3d at 331 (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)).  In *Sweda*, plaintiff alleged "practices of similarly situated fiduciaries" and "offered specific comparisons between returns on Plan investment options and readily available alternatives."  *Id.* at 332.  Similarly, here, Plaintiff alleged that "the Plan is an extreme outlier" and that other 401(k) plans invest significantly less in cash-equivalents than Defendant has chosen to do with respect to its employer contributions.  ECF No. 1 ¶¶ 53–55; *see also id.* ¶¶ 66–68.  Applying the requisite holistic review of the Complaint, there are sufficient factual allegations for the Court "to infer that the alleged fiduciary process was flawed or that the

fiduciaries acted imprudently." *Johnson v. PNC Fin. Servs. Grp., Inc.*, No. 20-cv-1493, 2022 WL 973581, at *6 (W.D. Pa. Mar. 31, 2022).

Second, Defendant argues that it acted prudently because it followed the express terms of the Plan by directing employer contributions into the Firstrust Fund. ECF No. 15-1 at 13 (citing 29 U.S.C. § 1104(a)(1)(D)). It is well-settled that "the duty of prudence trumps the instructions of a plan document, such as an instruction to invest exclusively in employer stock even if financial goals demand the contrary." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 421 (2014). Accordingly, even if a fiduciary complies with the terms of a plan, it is still possible for a fiduciary to breach the duty of prudence. In other words, fiduciaries cannot simply fall back on the terms of the plan document to shield themselves from liability when a plan itself is inconsistent with the duties imposed on them by ERISA. *See* 29 U.S.C. § 1104(a)(1)(D) (requiring that fiduciaries discharge their duties in accordance with plan documents "insofar as such documents and instruments are consistent with the provisions of this subchapter"); *Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1100 (9th Cir. 2004) ("ERISA requires fiduciaries to comply with a plan as written unless it is inconsistent with ERISA."); *Rodriguez v. Intuit Inc.*, 744 F. Supp. 3d 935, 944 (N.D. Cal. 2024) ("[E]ven if [the defendant] had complied with the terms of the Plan Document, that alone would not excuse [the defendant] from fulfilling its fiduciary duties under ERISA."); *Sec'y of Labor v. Macy's, Inc.*, No. 17-cv-541, 2022 WL 407238, at *9 (S.D. Ohio Feb. 10, 2022) ("[A] fiduciary may not use unlawful plan terms as a shield from liability for their violations of *other* ERISA provisions[,]" such as the duty of prudence); *But see Hamrick v. E.I. du Pont de Nemours & Co.*, Nos. 23-cv-238 & 23-cv-271, 2024 WL 359240, at *5 (D. Del. Jan. 31, 2024) (explaining that several courts have "concluded that § 1104(a)(1)(D) does not contemplate the

9

inverse fiduciary duty to not [] follow plan documents that are not consistent with ERISA" (collecting cases)).

Third, Defendant asserts a series of arguments in support of its contention that ERISA does not impose a "duty to invest the employer contributions in an array of different asset classes." ECF No. 15-1 at 14–16. But Defendant sidesteps around the point: the thrust of Plaintiff's Complaint is that Defendant's decision to mandate that all employer contributions be directed solely into the Firstrust Fund is "not typical," *see* ECF No. 1 ¶ 7, given that cash-equivalents are appropriate for short-term investments while Defendant's employees are investing with long-term growth objectives. ECF No. 19 at 11–12; *id.* at 14 ("Plaintiff takes issue with the mandatory investment of non-discretionary investments (meaning the participant cannot choose to invest them elsewhere) in a proprietary cash vehicle"). Furthermore, Plaintiff alleged that the Plan holds far more in cash-equivalents than other similarly situated 401(k) retirement plans and serves as an "extreme outlier." ECF No. 1 ¶¶ 53–55. While it may ultimately turn out that Defendant's arrangement with respect to employer contributions is prudent under the circumstances, at the pleading stage, Plaintiff's allegations are sufficient to support the reasonable inference that the prudent man standard of care may have been breached. *See Johnson*, 2022 WL 973581, at *6; *Pinnell v. Teva Pharms. USA, Inc.*, No. 19-cv-5738, 2020 WL 1531870, at *6 (E.D. Pa. Mar. 31, 2020) (denying a motion to dismiss where plaintiffs "plead[ed] substantial circumstantial evidence from which" the court could "reasonably infer a breach might have occurred"). Accordingly, Defendant's Motion to Dismiss Plaintiff's breach of the duty of prudence claim is denied.

### 2. *Duty of Loyalty*

In addition to a duty of prudence, ERISA imposes a duty of loyalty on fiduciaries and requires them "to act 'solely in the interest of the [plan's] participants and beneficiaries.'"

*Cunningham v. Cornell Univ.*, 604 U.S. 693, 696 (2025) (quoting 29 U.S.C. § 1104(a)(1)(A)); *see also Reich v. Compton*, 57 F.3d 270, 291 (3d Cir. 1995) (explaining that fiduciaries "violate their duty of loyalty when they act in the interests of the plan sponsor rather than with an eye single to the interests of the participants and beneficiaries of the plan" (internal quotations and citation omitted)).  Under the duty of loyalty, fiduciaries must "deal fairly and honestly with beneficiaries . . . to ensure that a plan receives all funds to which it is entitled."  *Cunningham*, 604 U.S. at 696 (internal quotations and citations omitted); *see also* 29 U.S.C. § 1104(a)(1)(A)(i)–(ii) (requiring that fiduciaries act "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan[.]").  When evaluating a duty of loyalty claim, courts assess "whether the allegations suggest[] that the fiduciary made decisions benefitting itself or a third party."  *Johnson*, 2022 WL 973581, at *7 (internal quotations and citation omitted).  A plaintiff cannot "simply 'recast' a claim of imprudence as an independent claim of disloyalty without additional facts suggesting an improper motive or financial benefit."  *Cho v. Prudential Ins. Co. of Am.*, No. 19-cv-19886, 2021 WL 4438186, at *11 (D.N.J. Sept. 27, 2021) (citation omitted).  Courts have also found that "the potential for a conflict, without more, is not synonymous with a plausible claim of fiduciary disloyalty."  *Kopp v. Klein*, 894 F.3d 214, 222 (5th Cir. 2018).

Defendant argues that Plaintiff's claim for a breach of the duty of loyalty is too speculative to survive a motion to dismiss and is not plausible.  ECF No. 15-1 at 17.  The Court disagrees.  Accepting the Complaint's allegations as true and construing them in Plaintiff's favor, Plaintiff plausibly stated a claim for a breach of the duty of loyalty and did not need to plead "detailed factual allegations."  *Twombly*, 550 U.S. at 555.  Plaintiff alleged two theories in support of its claim that Defendant breached its duty of loyalty by directing all employer contributions into the

11

Firstrust Fund.  First, Plaintiff alleged that Defendant benefitted and made a profit from its "retention of employer contributions in the proprietary Firstrust [] Fund," estimating that Defendant generated about "$460,000 per year in income from the Plan's investment of employer contributions in the Firstrust [] Fund."  ECF No. 1 ¶ 64.  Second, Plaintiff alleged that depositing employer contributions into the Firstrust Fund allowed Defendant to reduce its withdrawal risks. *Id.* ¶ 62.  Certificates of deposit are held for defined periods of time and provide banks with "certainty as to their withdrawal timing[,]" which helps "mitigate" the risk that depositors "withdraw their funds simultaneously."  *Id.* ¶ 61.  Plaintiff alleged that by directing employer contributions to the Firstrust Fund, Defendant was able to "reduce[] the bank's withdrawal risks while simultaneously profiting from Plan participants' retirement assets."  *Id.* ¶ 62.  Furthermore, because Defendant had sole control over where employer contributions were directed, the bank could "further mitigate[]" its "business risks" and increase its profits by "continuously reinvest[ing] participants' assets in new certificates of deposit once they mature."  *Id.*  As to the deposit of employer contributions into Defendant's savings accounts, Plaintiff alleged that there are also limitations on withdrawals of savings account assets.  *Id.* ¶ 63 & n.17.  Therefore, depositing employer contributions into savings accounts vis-à-vis the Firstrust Fund likewise reduces Defendant's risk of withdrawals.  *Id.* ¶ 63.

Once again, discovery may reveal that Defendant's arrangement with respect to employer contributions did not result in a breach of the duty of loyalty.  However, at the pleading stage, the allegations that Defendant benefited from directing employer contributions into the Firstrust Fund, in combination with the allegations that this arrangement reduced Defendant's withdrawal risks, just pass the bar of plausibility, such that the Court can infer that there may have been a breach of the duty of loyalty and that Defendant did not act "for the exclusive purpose of . . . providing

12

benefits to participants" of the Plan.  29 U.S.C. § 1104(a)(1)(A)(i); *see also Braden*, 588 F.3d at 598 ("ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences."); *McGowan v. Barnabas Health, Inc.*, No. 20-cv-13119, 2021 WL 1399870, at *7 (D.N.J. Apr. 13, 2021) (denying a motion to dismiss a breach of the duty of loyalty claim and explaining that "[c]ourts have found that revenue-sharing, while not per se improper, can give rise to an inference of breach of the duty of loyalty when combined with other allegations—for example, that cheaper compensation structures were readily available"). Nor are Defendant's alternative explanations for its actions "more reasonable or better supported than" Plaintiff's alleged theory of disloyalty and misconduct.  *Mator*, 102 F.4th at 189; *see also* ECF No. 15-1 at 18 (arguing that Defendant's owners "believe[] [it] is important" for participants of the Plan to "always have the savings on their employer contributions to fall back on"); *Sweda*, 923 F.3d at 329 ("[A] pure heart and an empty head are not enough." (citation omitted)).  The Court will thus deny Defendant's Motion to Dismiss Plaintiff's breach of the duty of loyalty claim because Plaintiff plausibly alleged that Defendant acted for its own benefit.

## B.  Plaintiff Plausibly Stated Prohibited Transaction Claims

ERISA contains an enumerated list of transactions that fiduciaries are prohibited from engaging in.  *See* 29 U.S.C. § 1106.  In his Complaint, Plaintiff also raised prohibited transaction claims, alleging that Defendant violated 29 U.S.C. §§ 1106(a)(1)(D) and 1106(b)(1).  ECF No. 1 ¶¶ 89–95.  Section 1106(a)(1)(D) prohibits fiduciaries from "caus[ing] the plan to engage in a transaction" that the fiduciary "knows or should know . . . constitutes a direct or indirect . . . transfer to, or use by or for the benefit of a party in interest, of any assets of the plan[.]"  29 U.S.C. § 1106(a)(1)(D); *cf. Cunningham*, 604 U.S. at 700.  The term "party in interest" includes any fiduciary, counsel, or employee of an employee retirement plan, among others.  *See* 29 U.S.C. § 1002(14)(A).  Moreover, Section 1106(b)(1) provides that "[a] fiduciary with respect to a plan

13

shall not . . . deal with the assets of the plan in his own interest or for his own account[.]"  *Id.* §
1106(b)(1).  To state a claim for violations of 29 U.S.C. §§ 1106(a)(1)(D) and 1106(b)(1), Plaintiff
"need only plausibly allege each of th[e] elements" of those prohibited transactions.  *Cunningham*,
604 U.S. at 700; *cf. id.* at 709 ("[P]laintiffs seeking to state a § 1106(a)(1)(C) claim must plausibly
allege that a plan fiduciary engaged in a transaction proscribed therein, no more, no less.").

Here, Plaintiff alleged that Defendant is a "party in interest" as a fiduciary, and violated
Sections 1106(a)(1)(D) and 1106(b)(1) by mandating that employer contributions be deposited
into the Firstrust Fund, with the result that those funds were then used for Defendant's own benefit
and "for the purpose of profiting from participants' assets and reducing Firstrust's withdrawal
risks."  ECF No. 1 ¶¶ 91–92; *see also id.* ¶¶ 22, 40, 62, 64.  Plaintiff further alleged that the Plan
lost investment earnings as a result of Defendant's actions.  *Id.* ¶ 94; *see also id.* ¶¶ 66–68.
Plaintiff's factual allegations are sufficient to state a plausible entitlement to relief for his
prohibited transaction claims.

In its Motion to Dismiss, rather than contesting the sufficiency of the allegations as to
Count II, Defendant raised two affirmative defenses.  *See* ECF No. 15-1 at 19–22; *see also* ECF
No. 19 at 21 n.5.  Courts may grant a Rule 12(b)(6) motion on the basis of an affirmative defense
"only 'if the predicate establishing the defense is apparent from the face of the complaint.'"
*Chaudhari v. Parker*, No. 21-1337, 2022 WL 3025478, at *2 (3d Cir. Aug. 1, 2022) (quoting
*Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 n.10 (3d Cir. 1978)).  If an affirmative
defense is not apparent from the face of the complaint, "the district court must either deny the
12(b)(6) motion or convert it to a motion for summary judgment and provide both parties an
opportunity to present relevant material."  *Hoffman v. Nordic Nats., Inc.*, 837 F.3d 272, 280 (3d

Cir. 2016).  As the Third Circuit has explained, this rule serves the purpose of "avoid[ing] factual contests at the motion to dismiss stage."  *Id.*

### 1.  *29 U.S.C. § 1108(b)(4) Exemption*

First, Defendant argues that both of Plaintiff's prohibited transaction claims are subject to an exemption pursuant to 29 U.S.C. § 1108(b)(4).  *See* ECF No. 15-1 at 19–20.  In response, Plaintiff argues that the exemption is not apparent from the face of the Complaint and, in any event, "the exemptions found in Section 1108 categorically do not apply to prohibited transaction claims involving fiduciary self-dealing under Section 1106(b)."  ECF No. 19 at 20 (citing *Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 94 (3d Cir. 2012) [hereinafter "*Iola*"]); *id.* at 22.  In its Reply, Defendant distinguished Plaintiff's cases as addressing "the exemption under Section 1108(b)(2), not Section 1108(b)(4)," and also identified a Department of Labor regulation, which provides that Section 1108(b)(4) applies to claims brought pursuant to Section 1106(b)(1).  ECF No. 20 at 14 & n.1.

The Court begins with the threshold question of whether Section 1108(b)(4) may provide a defense to claims brought pursuant to Section 1106(b)(1).

In *Iola*, the Third Circuit addressed whether Sections 1108(b)(2) and (c)(2) exempted a plaintiff's Section 1106(b)(3) claim.  700 F.3d at 93–96.  Examining the language of the neighboring statutory provisions, the *Iola* court explained that Section 1106(b) differs from Section 1106(a) because Section 1106(b) "contains no corresponding reference to [Section 1108]."  *Id.* at 95.  "To avoid rendering the prefatory clause in [Section 1106](a) mere surplusage," the Third Circuit agreed with the Ninth Circuit that "Congress tempered [Section 1106](a) transactions, but not [Section 1106](b) transactions, with [Section 1108] exemptions."  *Id.*  In that sense, "Congress cast [Section 1106](b) as unyielding."  *Id.*  To inform its analysis, the Third Circuit also looked to a Department of Labor regulation for guidance, which expressly stated that Section "[1108](b)(2)

15

'exempts from the prohibitions of section [1106](a) of the Act payment by a plan to a party in interest, including a fiduciary,' but '*does not contain an exemption* from acts described in section [1106](b)(1) . . ., section [1106](b)(2) . . . or section [1106](b)(3)[.]'" *Id.* at 94 (quoting 29 C.F.R. § 2550.408b–2(a)) (emphasis added).  Therefore, Section 1108(b)(2) provided defendant Barrett "no defense to liability" in connection with his Section 1106(b) transaction.  *Id.*

Whether a Section 1106(b)(1) claim is subject to an ERISA exemption under Section 1108(b)(4) appears to be an issue of first impression in this Circuit.  Notwithstanding the *Iola* court's discussion of the prefatory language in Section 1106(a), that court did not squarely address the exemption contained in Section 1108(b)(4) and its interaction with Section 1106(b)(1).

In order to determine if Section 1108(b)(4) can excuse a violation of Section 1106(b)(1), the Court begins by "examin[ing] first the language of the governing statute, guided not by a single sentence or member of a sentence, but look[ing] to the provisions of the whole law, and to its object and policy." *Id.* at 93 (quoting *John Hancock Mut. Life Ins. Co. v. Harris Tr. & Sav. Bank*, 510 U.S. 86, 94–95 (1993)).  As explained above, Section 1106(b)(1) provides that "[a] fiduciary with respect to a plan shall not . . . deal with the assets of the plan in his own interest or for his own account[.]" 29 U.S.C. § 1106(b)(1).  Section 1108(b)(4) states that the "prohibitions provided in section 1106 . . . shall not apply to":

> (4) The investment of all or part of a plan's assets in deposits which bear a reasonable interest rate in a bank or similar financial institution supervised by the United States or a State, if such bank or other institution is a fiduciary of such plan and if—
>
> > (A) the plan covers only employees of such bank or other institution and employees of affiliates of such bank or other institution, or

16

(B) such investment is expressly authorized by a provision of the plan or by a fiduciary (other than such bank or institution or affiliate thereof) who is expressly empowered by the plan to so instruct the trustee with respect to such investment.

*Id.* § 1108(b)(4). Therefore, by their plain terms, both statutory provisions expressly apply to a "fiduciary" of a plan. *Id.*; *id.* § 1106(b)(1).[1] Here, Defendant Firstrust Savings Bank is a fiduciary of the Plan. *See* ECF No. 1 ¶ 11. Notably, Section 1108(b) also refers to "[S]ection 1106" as a whole and does not distinguish between Sections 1106(a) and (b). *See* 29 U.S.C. § 1108(b).

In addition, Congress tasked the Secretary of the Department of Labor with "establish[ing] an exemption procedure" pursuant to which the Secretary could "grant a conditional or unconditional exemption of any fiduciary or transaction . . . from all or part of the restrictions imposed by section[] 1106." *Id.* § 1108(a). Moreover, this delegation included the authority to grant exemptions from "section 1106(b)" as long as the Secretary "affords an opportunity for a hearing and makes a determination on the record with respect to the findings required by" certain paragraphs in the statutory subsection. *Id.*; *see also Iola*, 700 F.3d at 94 n.24 (acknowledging that the "Secretary of the Department of Labor may grant an exemption from the strictures of [Section 1106](b) so long as the exemption is published in the Federal Register and a public hearing is held on the matter" (citation omitted)). Therefore, despite Congress's decision to only preface Section 1106(a) with a reference to Section 1108—thereby "cast[ing] [Section 1106](b) as unyielding[,]" *id.* at 95—Congress specifically anticipated and considered that there could be exemptions to the prohibited transactions in Section 1106(b). *See* 29 U.S.C. § 1108(a).

---

[1] In comparison, in *Iola*, the Third Circuit explained that "by its plain terms," Section 1108(b)(2) "applies only to 'transactions . . . with a party in interest.'" 700 F.3d at 94 (quoting 29 U.S.C. § 1108(b)(2)). This was significant because only Section 1106(a) "proscribes transactions with 'part[ies] in interest,' but [Section 1106](b) does not." *Id.* Therefore, it "follow[ed]" from the statutory provisions that "[Section 1108](b)(2) provides an exemption for [Section 1106](a) transactions, but not for [Section 1106](b) transactions." *Id.*

Next, in examining the language of the statutory provisions, the *Iola* court found it instructive to turn to a regulation promulgated by the Department of Labor as "the agency charged with administration and enforcement of" ERISA.  700 F.3d at 94.  Following in the Third Circuit's footsteps, this Court thus also turns to the relevant regulation to determine whether it speaks to the exemption.  Here, the relevant Department of Labor regulation provides that Section 1108(b)(4)

> exempts from the prohibitions of section [1106] of the Act the investment of all or a part of a plan's assets in deposits bearing a reasonable rate of interest in a bank or similar financial institution supervised by the United States or a State, even though such bank or similar financial institution is a fiduciary or other party in interest with respect to the plan,

if certain conditions are met.  29 C.F.R. § 2550.408b–4(a).  In addition,

> *Section [1108](b)(4) provides an exemption from sections [1106](b)(1) of the Act . . . and [1106](b)(2) . . ., as well as section [1106](a)(1)*, because section [1108](b)(4) contemplates a bank or similar financial institution causing a plan for which it acts as a fiduciary to invest plan assets in its own deposits if the requirements of section [1108](b)(4) are met.

*Id.* (emphasis added).

Unlike in *Iola*, where a Department of Labor regulation cordoned off the Section 1108(b)(2) exemption from applying to Section 1106(b) claims, *see* 700 F.3d at 94 (quoting 29 C.F.R. § 2550.408b–2(a)), here, the regulation specifically states that the Section 1108(b)(4) exemption applies to Section 1106(b)(1) claims.  *See* 29 C.F.R. § 2550.408b–4(a).  Of course, this Court need not "defer to an agency interpretation of the law simply because a statute is ambiguous[,]" *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 413 (2024), and does not defer here.  However, as a part of its overall analysis of the interaction between Sections 1108(b)(4) and 1106(b)(1), the Court finds it instructive that the Department of Labor viewed the Section 1108(b)(4) exemption as inclusive of Section 1106(b)(1) claims, just as the Third Circuit found it

18

instructive in *Iola* that the relevant regulation excluded Section 1106(b)(1) claims from the purview of the Section 1108(b)(2) exemption. 700 F.3d at 94. Accordingly, for these reasons, the Court holds that Defendant may raise the affirmative defense provided by Section 1108(b)(4) in connection with Plaintiff's Section 1106(b)(1) claim.

Having determined that Defendant can assert Section 1108(b)(4) as a defense to both of Plaintiff's prohibited transaction claims pursuant to Sections 1106(a)(1)(D) and 1106(b)(1), the Court next turns to the merits of Defendant's affirmative defense. As relevant to its Motion, Defendant contends that the Section 1108(b)(4) exemption applies to its investment of employer contributions in the Firstrust Fund—i.e., bank deposit products—and thus bars Plaintiff's prohibited transaction claims. ECF No. 15-1 at 19–20.

At this stage, Defendant's affirmative defense fails as to both of Plaintiff's prohibited transaction claims because Defendant has not demonstrated that this exemption is apparent from the face of the Complaint. Whether employer contributions were invested "in deposits which bear a reasonable interest rate" is a question of fact that requires discovery before it can be resolved. 29 U.S.C. § 1108(b)(4). Defendant's sole citation to an article that is purportedly incorporated into the Complaint does not suffice, *see* ECF No. 15-1 at 20 & n.5, especially when Plaintiff asserted that it is contesting the Firstrust Fund's performance and interest rate, in addition to Defendant's investment strategy. *See* ECF No. 19 at 22; ECF No. 21 at 4–5; ECF No. 1 ¶ 45 (alleging that "Defendant's strategy failed to keep pace with inflation" and that "Defendant's annual average earnings rate on employer contributions . . . was substantially outpaced by inflation"); *id.* ¶ 47 (alleging that participants' accounts have "lost[] real value over time" due to Defendant's deposit of employer contributions into the Firstrust Fund); *see also id.* ¶¶ 66–68. This is the type of "factual contest[]" that the Third Circuit has cautioned district courts to "avoid . . .

19

at the motion to dismiss stage." *Hoffman*, 837 F.3d at 280.  However, Defendant is not foreclosed from re-raising this affirmative defense in any forthcoming answer to the Complaint.

   *2.  Statute of Limitations*

   Second, Defendant argues that Plaintiff's prohibited transaction claims are time barred. *See* ECF No. 15-1 at 20–22.  ERISA provides for either a six-year or three-year statute of limitations under 29 U.S.C. § 1113: a plaintiff must file a breach of fiduciary duty or prohibited transaction lawsuit "after the earlier of—(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or . . . (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation[.]"  29 U.S.C. § 1113(1)–(2). Defendant contends that Plaintiff had actual knowledge of "all material facts" for his prohibited transaction claims before November 21, 2022—three years before the Complaint was filed.  ECF No. 15-1 at 21.  In support of this contention, Defendant points out that Plaintiff was an employee of Defendant for three years, participated in the Plan, and did "not dispute that he knew that the employer contributions were made into the Firstrust Fund."  *Id.* (citing ECF No. 1 ¶¶ 10, 69).

   Based on the allegations in the Complaint, including the two paragraphs that Defendant cited, Defendant has failed to demonstrate that Plaintiff had actual knowledge of "all material facts" giving rise to his prohibited transaction claims before November 21, 2022.  *Iola*, 700 F.3d at 99 (citation omitted).  Section 1113(2) begins to run "only when a plaintiff actually is aware of the relevant facts, not when he should be[,]" and "a given plaintiff will not necessarily be aware of all facts disclosed to him[.]"  *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 589 U.S. 178, 187 (2020); *see also Grand Traverse Band of Ottawa & Chippewa Indians v. Blue Cross Blue Shield of Mich.*, 146 F.4th 496, 508 (6th Cir. 2025) ("[T]o satisfy § 1113(2), a plaintiff must in fact be aware of the relevant information; it is not enough that the information was disclosed or made available."

20

(internal quotations and citation omitted)).   Moreover, the United States Supreme Court has squarely rejected a constructive knowledge standard in connection with ERISA's three-year statute of limitations. *Intel Corp. Inv. Pol'y Comm.*, 589 U.S. at 184 (holding that "actual knowledge does in fact mean what it says" (internal quotations and citation omitted)); *id.* at 185–86 (distinguishing actual knowledge from constructive knowledge).

In essence, Defendant asks this Court to infer that Plaintiff had actual knowledge based simply on the fact that he participated in the Plan, ergo he must have known that employer contributions were being directed towards the Firstrust Fund since that information was available to him.   At this stage, the Court must assume the truth of all factual allegations and make any reasonable inferences in Plaintiff's favor. *Warren Gen. Hosp.*, 643 F.3d at 84.   The allegations in the Complaint do not sufficiently establish that Plaintiff had actual knowledge of all material facts giving rise to his claims, nor does Plaintiff allege when he became aware that Defendant deposited employer contributions into the Firstrust Fund. *See, e.g.*, ECF No. 1 ¶ 69 (alleging that "[u]ntil shortly before filing this action, Plaintiff lacked knowledge of material information to support his claims[,]" including "knowledge of the asset allocations and earnings of typical 401(k) plans relative to the Plan" and "actual knowledge of Defendant's process for monitoring the Plan").   And if the statute of limitations "bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) (citation omitted)).   Accordingly, Defendant's Motion to Dismiss Plaintiff's prohibited transaction claims is denied.

## IV.   **CONCLUSION**

For the foregoing reasons, the Court will deny Defendant's Motion (ECF No. 15), and permit Counts I and II to proceed to discovery.   An appropriate Order will follow.

BY THE COURT:

/s/ Chad F. Kenney

**CHAD F. KENNEY, JUDGE**